UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CITIZENS SECURITIES, INC., Plaintiff, v. DARRELL SMITH and AMERIPRISE FINANCIAL SERVICES, LLC, Defendants. | * | Civil Action No. 26-cv-14717-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Citizens Securities, Inc. ("Citizens" or "Plaintiff") brings this action against Defendants Darrell Smith ("Smith") and Ameriprise Financial Services, LLC ("Ameriprise" and together, "Defendants") seeking a temporary restraining order ("TRO") and preliminary injunction against Defendants for alleged violations of Smith's employment agreement with Citizens, misuse of Citizen's confidential information, and other related alleged transgressions. [ECF No. 4]; [ECF No. 5]. The parties intend to engage in arbitration before the Financial Industry Regulatory Authority ("FINRA"), so this matter is before the Court solely for the purpose of temporary injunctive relief. [ECF No. 5 at 3]; [ECF No. 27 at 13]. For the reasons set forth below, Plaintiff's motion for a temporary injunctive relief is **GRANTED IN PART** and **DENIED IN PART**.

# I. BACKGROUND

## A. Factual Background

Citizens is a financial services firm that provides customers with investment advice, financial planning, and other services. [ECF No. 1 ¶ 12 ("Complaint" or "Compl.")]. Citizens hired Smith as a financial consultant, now known as a financial advisor, on May 5, 2008, [id. ¶ 21], and on May 6, 2008, Smith signed an employment agreement with Citizens (the "Employment Agreement"), [id. ¶ 22]. The Employment Agreement included the following restriction regarding customer account information:

> You agree that, except at the express direction of [Citizens], you will not at any time during the term of or after this Agreement, either directly or indirectly, divulge, disclose, or communicate any trade secrets learned by you in connection with your employment as a Financial Consultant. Trade secrets shall mean any information which is not generally known or publicly available outside of [Citizens] concerning any matters relating to the affairs or business of [Citizens], including without limiting the generality of the foregoing information concerning [Citizens] customers' accounts or portfolios . . .

[Id. ¶ 25]. It contained the following provision regarding client records:

> You agree that all memoranda, notes, records or other documents made, or compiled by you, or made available to you, during the term of this Agreement concerning the business of [Citizens], or any account or portfolios of any of [Citizens'] customers, are confidential business records and shall remain the property of [Citizens], and shall be delivered by you to [Citizens] upon the termination of your employment or at any other time at [Citizens'] request and that none of such records, nor any part of them, is to be removed from the branch of the Bank at which you are employed either in original form or in duplicated or copied form, and that the names, addresses, and other facts in such records are not to be transmitted verbally except as necessary in the ordinary course of conducting business for [Citizens].

[Id. ¶ 26]. The Employment Agreement also prohibited Smith from "solicit[ing] by mail, phone . . . [the] business of any customer whose name became known to [him] as a direct or indirect result of [his] employment" and from "notify[ing] any customer of [Citizens] . . . of [his] termination . . . or [his] new association with any . . . firm" during and for one year after his

employment at Citizens. [Id. ¶ 28]. Citizens maintains a Salesforce database with client data, [ECF No. 5-1 ¶ 5], and during his employment, Smith had access to information about the clients he serviced, [ECF No. 27 ¶ 16].

On September 25, 2026, Smith resigned from Citizens and joined Ameriprise. [Compl. ¶ 34]. At the time of his resignation, Smith serviced clients holding approximately $194 million in assets at Citizens, including $107 million in assets under management, and had 432 client relationships with 343 households. [Id. ¶ 35]. Citizens alleges that within two days of his resignation, Smith began initiating contact with and soliciting his Citizens' clients, beginning with the clients with the largest accounts. [Id. ¶¶ 39, 41]. Smith admits that after he resigned from Citizens, he recalled the names of approximately 150 of his clients, obtained their contact information from public sources, and contacted some or all of them to notify them that he had left Citizens. [ECF No. 27 ¶ 14]. According to Smith, approximately 111 clients with $120 million in assets have transferred to Ameriprise by their own request. [Id. ¶ 21]. Citizens claims that Ameriprise has created a team to help Smith transfer client accounts. [Compl. ¶ 49].

Citizens asserts that until Defendants are enjoined, they will continue to use Citizens' confidential information to solicit Citizens' clients to move to Ameriprise, and Citizens will lose client relationships, goodwill, and future investments and opportunities. [Compl. ¶¶ 53–55].

**B. Procedural History**

On October 16, 2026, Citizens filed its Complaint, [Compl.], and an emergency motion for a TRO and preliminary injunction, [ECF No. 4]. Smith and Ameriprise opposed Citizens' motion for injunctive relief on October 23, 2026, [ECF No. 26]; [ECF No. 28], and Citizens filed a reply brief on October 26, 2026, [ECF No. 32]. On October 26, 2026, the Court held a hearing on Citizens' motion for injunctive relief. [ECF No. 31].

Citizens brings nine claims against Smith and Ameriprise, including: (1) breach of contract against Smith for breaching multiple provisions of the Employment Agreement (Count I); (2) breach of the implied covenant of good faith and fair dealing against Smith (Count II); (3) misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., against both Defendants (Count III); (4) misappropriation of trade secrets under the Massachusetts Uniform Trade Secrets Act, Mass. Gen. Laws ch. 93, §§ 42-42G, against both Defendants (Count IV); (5) tortious interference with contractual relations against Ameriprise (Count V); (6) tortious interference with advantageous business relations against both Defendants (Count VI); (7) breach of fiduciary duty against Smith (Count VII); (8) aiding and abetting breach of fiduciary duty against Ameriprise (Count VIII); (9) unfair methods of competition and unfair acts under Chapter 93A, Mass. Gen. Laws ch. 93A, § 11, against Ameriprise. [Compl. ¶¶ 56–108]. In its motion for injunctive relief, Citizens seeks to enjoin Defendants from initiating contact with any Citizens client that Smith serviced and from using or disclosing Citizens' confidential information, in addition to other relief. [ECF No. 4].

## II. LEGAL STANDARD

When evaluating a motion for a TRO, the Court considers four factors: (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the request is denied; (3) the balance of hardships; and (4) whether the TRO is in the public interest. Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 161–62 (1st Cir. 2004) ("[T]he traditional four-part preliminary injunction standard applies in full flower to motions brought under Rule 65 in hopes of securing prejudgment freeze orders."). The First Circuit has held that these four factors "are not entitled to equal weight in the decisional calculus." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013). Rather, the movant's likelihood of success on the merits "is the main bearing

wall of the four-factor framework." Id. at 10 (quoting Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir.1996).

## III. DISCUSSION

The Court finds that the requirements for issuing a TRO against Smith are satisfied and will briefly address each factor. With respect to Ameriprise, Citizens stated during the October 26 hearing that they do not have any direct evidence of Ameriprise's involvement in the situation at issue and conceded that there is no basis for Ameriprise to be enjoined aside from their current relationship with Smith. See [ECF No. 31]. As such, the Court will deny the requested relief as to Ameriprise and focus its analysis on Smith.

### A. Likelihood of Success on the Merits

The First Circuit has observed that the likelihood of success on the merits is both the "sine qua non" and the "most important part of the preliminary injunction assessment," explaining that "if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1, 7, 10 (1st Cir. 2012) (quoting Jean v. Mass. State Police, 492 F.3d 24, 27 (1st Cir. 2007); New Comm Wireless Servs. Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)). To carry its burden on this factor, the Plaintiff "must establish a 'strong likelihood' that [it] will ultimately prevail." Id. at 10 (quoting Respect Me. PAC v. McKee, 622 F.3d 13, 15 (1st Cir. 2010)).

With respect to Citizens' likelihood of success on the merits, the Court finds that it is likely to succeed, at least in part, on its breach of contract claim. The claim rests on multiple bases, including that Smith impermissibly used Citizens' confidential client information in violation of paragraphs 10(a) through 10(c) of the Employment Agreement, solicited Citizens'

clients in violation of Paragraph 10(d)(iii) of the Employment Agreement, and notified Citizens' clients of his resignation and new affiliation in violation of Paragraph 10(d)(iv) of the Employment Agreement. [Compl. ¶ 59].

Regarding Citizens' claim that Smith violated paragraph 10(d)(iv) of the Employment Agreement, it is undisputed that after he resigned, Smith called several of his former clients and, at a minimum, notified them that he had moved to Ameriprise and provided them with his new contact information. [ECF No. 26 at 4]; [ECF No. 27 ¶ 19]. Citizens contends, and the Court agrees, that Smith's actions were contrary to the clear language of paragraph 10(d)(iv) of the Employment Agreement, which prohibited him from "notify[ing] any customer of [Citizens] . . . of [his] termination . . . or [his] new association with any . . . firm" during and for one year after his employment at Citizens. [Compl. ¶ 28]. Smith's only rebuttals to this apparent breach are that the provision in paragraph 10(d)(iv) "contradicts industry standards;" that such covenants are disfavored by the law, citing to Durapin, Inc. v. Am. Prods, Inc., 59 A.2d 1051, 1053 (R.I. 1989), in which the Rhode Island Supreme Court[1] held that "the crucial issue [for noncompetition agreements] is reasonableness"; and that his ethical and fiduciary duties required him to contact his clients. [ECF No. 26 at 7]. In response, Citizens argues that Smith's ethical duties as a financial advisor attached only when giving financial advice, which he does not claim he did during these "announcement" calls, and that Smith has directed the Court to no specific duty mandating that he call his former clients after resigning or that would render the contract provision unenforceable. [ECF No. 29-1 at 5–6]. Based on these arguments and the facts before it, the Court finds that Citizens is likely to succeed on the merits of its claim that Smith breached

[1] The parties agree that Rhode Island law governs the Employment Agreement. [ECF No. 5 at 8]; [ECF No. 26 at 7].

the provision in paragraph 10(d)(iv), considering Smith's admission that he called multiple of his former clients in the days immediately following his resignation and notified them of his "termination" and "new association" with Ameriprise. See [ECF No. 26 at 4]; [Compl. ¶ 28].

Further, the Court also finds that Citizens is likely to succeed on in its breach of contract claim concerning Smith's alleged misuse of Citizens' confidential information. Citizens alleges that in the Employment Agreement, Smith agreed that client records are confidential business records, that those records and copies thereof could not leave the bank, and that names and other facts in the records could not be transmitted verbally outside of Citizens. [ECF No. 5 at 9]; [ECF No. 5-1 at 9]. Paragraph 10(b) of Smith's Employment Agreement states that all "records or other documents made, or compiled by [him], or made available to [him], . . . concerning the business of [Citizens], or any account or portfolios of any [Citizens] customers, are confidential business records," that Smith was prohibited from removing those records or copies thereof from the bank, and that "names, addresses, and other facts in such records are not to be transmitted verbally except as necessary in the ordinary course of conducting business for [Citizens]." [ECF No. 5-1 at 9]. Smith has admitted to remembering the names of former clients, searching public records for those clients' contact information, and then calling those clients, [ECF No. 27 ¶¶ 14, 19], and Citizens argues that these acts constitute misuse of confidential information in violation of the Employment Agreement, [ECF No. 5 at 10].

Another session of this Court recently held that very similar conduct constituted a "taking" of confidential information in violation of an identical employment agreement provision. Citizens Securities, Inc. v. Coppock, No. 26-cv-12161, 2026 WL 2644012, at *5 (D. Mass. July 27, 2026). In that case, the defendant, while employed at Citizens, compiled from memory a list of approximately 160-180 clients and used public sources to obtain their contact

information, cross-referencing the public information with his memory to ensure that he had identified the correct individual. Id. at *2. The Court there found that the memorization of the client names constituted a taking of confidential information, and that "under Rhode Island law, a client list, even if committed to memory, represents confidential information under an employment agreement with a noncompete clause." Id. at *4. Accordingly, the Court held that the client names were confidential data pursuant to the employment agreement, and that the defendant's memorization of the names for the purpose of later searching for their contact information in order to contact them, constituted misuse of that confidential data. Id. at *5.

This Court finds no reason to differ from the analysis in Coppock. While Smith attempts to differentiate the case by claiming that his own public-record searches occurred after his resignation, not during his employment at Citizens, he does not dispute that he learned of the client names during his employment. [ECF No. 26 at 12]. The fact that the misuse potentially occurred just days after his resignation has little bearing on whether he violated paragraph 10(b) of the Employment Agreement. See id. Further, Smith admits that approximately 111 clients with $120 million in assets transferred their accounts to Ameriprise, out of his total of 750 clients with approximately $183.2 million in assets. [ECF No. 27 ¶¶ 10, 21]. These figures suggest that Smith prioritized contacting clients with the largest account balances, information which he likely would have known based on his position at Citizens, further supporting the allegation that he misused confidential client data.

As such, the Court finds that the likelihood of success on the merits weighs in favor of Citizens, as it is likely to succeed on at least two aspects of its breach of contract claim against Smith.[2]

**B. Irreparable Harm**

A plaintiff seeking preliminary injunctive relief must demonstrate "that irreparable injury is likely in the absence of an injunction." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (emphasis in original). "[I]rreparable harm can consist of 'a substantial injury that is not accurately measurable or adequately compensable by money damages.'" Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 13 (1st Cir. 2000) (quoting Ross-Simons of Warwick, Inc., 102 F.3d at 19). "The necessary concomitant of irreparable harm is the inadequacy of traditional legal remedies. The two are flip sides of the same coin: if money damages will fully alleviate harm, then the harm cannot be said to be irreparable." K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 914 (1st Cir. 1989). "[D]istrict courts have broad discretion to evaluate the irreparability of alleged harm," Ross-Simons of Warwick, Inc., 217 F.3d at 13 (quoting K-Mart Corp., 875 F.2d at 915), and "[i]n the preliminary injunction context, the First Circuit Court of Appeals measures irreparable harm 'on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success

[2] Because the Court finds that Citizens is likely to succeed on at least part of its contract claim, it need not reach the solicitation aspect of that claim or the other claims asserted in the Complaint. See Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs, 826 F.3d 1030, 1040 (8th Cir. 2016) (A "plaintiff 'need only establish a likelihood of succeeding on the merits of any one of [its] claims'" for a preliminary injunction to be granted.) (quoting Am. Rivers v. U.S. Army Corps of Eng'rs, 271 F. Supp. 2d 230, 250 (D.D.C. 2003)).

shown,'" Rapid Pharma. AG v. Kachroo, 180 F. Supp. 3d 96, 105 (D. Mass. 2015) (quoting Braintree Labs, Inc. v. Citigroup Global Markets Inc., 622 F.3d 36, 42–43 (1st Cir. 2010)).

In support of its argument that it will suffer irreparable harm, Citizens claims that each client who transfers their account to Ameriprise based on Smith's actions takes future investments, referrals, and banking relationships that Citizens has developed over time, and that money damages cannot restore those client relationships. [ECF No. 5 at 15]. Smith contends that these purported damages are speculative and that any harm can be remedied by money damages calculated based on the economic value of the lost clients. [ECF No. 26 at 14–15].

In this scenario, like in Coppock, "while abstract money damages may be calculated, the long-term effects are incalculable and therefore ought to be remedied at the preliminary injunction stage." Coppock, 2026 WL 2644012, at *6. Citizens has already lost at least 111 clients who hold approximately $120 million in assets, see [ECF No. 27 ¶ 21], and the potential lost revenue from those clients' investments, referrals they could have provided, additional banking they could have done at Citizens, and other revenue streams they could have generated over the long term would be difficult to calculate. See Merrill Lynch, Pierce, Fenner & Smith v. Ran, 67 F. Supp. 2d 764, 779 (E.D. Mich. 1999) ("There is simply no way of predicting (1) how clients' portfolios might have grown if not transferred away from [plaintiff], (2) what assets existing clients may earn, inherit, or even win over time, nor (3) what potential referrals transferring clients might have made."). As such, and taking into consideration that Citizens has already shown a likelihood of success on the merits, the Court concludes that it has also made a sufficient showing that it will suffer irreparable harm absent temporary injunctive relief.

### C. The Balance of the Equities and the Public Interest

To obtain preliminary injunctive relief, a Plaintiff must also show "the balance of equities tips in [its] favor." Winter, 555 U.S. at 20. This involves weighing "the balance of relevant hardships as between the parties." Vaqueria Tres Monjitas, Inc. v. Fabre Laboy, 587 F.3d 464, 482 (1st Cir. 2009). Furthermore, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24 (quoting Weinberger v. Romero–Barcelo, 456 U.S. 305, 312 (1982)). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 22 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).

First, with respect to the equities, Citizens argues that injunctive relief of the type sought would not prevent Smith from working at Ameriprise or from competing for new clients, and that it would not stop any client from moving their account to Ameriprise or prevent Ameriprise from processing client account transfers. [ECF No. 5 at 16]. Further, it argues that any hardship to Smith flows from the promise that he made to Citizens in the Employment Agreement. [Id.]. The Court agrees. It has been almost a month since Smith resigned from Citizens, and as stated during the October 26 hearing, Smith has already notified many of his former clients whose names he had committed to memory of his move to Ameriprise, mitigating much of the harm that a temporary injunction could cause him. See [ECF No. 31]. Accordingly, the Court finds that the balance of the equities factor weighs somewhat in Citizens' favor.

With respect to public interest, Smith contends that this factor weighs against injunctive relief because the public should be able to freely select their financial advisor, and the requested order would obstruct the flow of neutral information to clients. [ECF No. 26 at 17]. Citizens, on

the other hand, argues that the public has an interest in the integrity of contracts and the protection of confidential business information. [ECF No. 5 at 16]. The Court recognizes the importance of all of these interests to the public, and does not find that one necessarily outweighs the others. As such, the public interest factor is neutral.

## IV. CONCLUSION

For the foregoing reasons, Citizens has demonstrated that it is likely to succeed on the merits of its breach of contract claim, and the irreparable harm and equities factors weigh in favor of temporary injunctive relief. Citizens' motion for a TRO or preliminary injunction is hereby **GRANTED IN PART** in so far as the Court will enter a temporary restraining order against Smith and **DENIED IN PART** in so far as the Court declines to grant injunctive relief against Ameriprise. The Court orders as follows:

Smith and those he directs are enjoined from: (1) initiating contact with any Citizens client whom Smith serviced or whose name became known to him while he was employed by Citizens, other than clients whose accounts transferred to Ameriprise before the order entered; (2) using, disclosing, or transmitting Citizens' records or confidential information, or any information derived from them, including but not limited to the names, addresses, email addresses, telephone numbers, account numbers, and financial information of Citizens' clients, whether taken from Citizens' records or reproduced from memory; and (3) destroying, deleting, or altering any documents, electronically stored information, or devices relevant to Citizens' claims, including the computers, telephones, and email, text-message, and social media accounts that Smith and personnel working with him have used since September 25, 2026. Smith is required, within 48 hours, to deliver to Citizens' counsel any Citizens records and confidential

information in his possession, custody, or control, in any form, and to preserve without further use any electronic copies pending further order of this Court or FINRA.

**SO ORDERED.**

October 28, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE